(No. 1991—

CLAUDE ECHOLS, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 1, 1935.*

*Rehearing denied October 15, 1937.*

HARRIS B. GAINES, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

The claimant alleges in his claim filed on September 28, 1932, that he is a resident of the city of Chicago, and had been a member of Company B of the Eighth Illinois Regiment since 1931; that on the 1st day of August, 1931, by orders of the superior officers, he went to Camp Grant for encampment; that on the 2nd day of August, 1931, while in Camp Grant, he was ordered by a superior officer to assist in loading a truck with lumber to take out to the drill field for the purpose of building a boxing ring for the members of the regiment; that pursuant to the order, the claimant assisted in loading the truck with lumber, and climbed on top of the truck to take the lumber to the drill field and unload the same; that in their journey over to the place where they were to unload the lumber, the driver of the truck, who was also a member of claimant's regiment, drove into a hole about eight inches deep; that this caused the load of lumber to move, and the claimant lost his hold and fell from the top of the lumber on said truck to the ground, falling upon his back and right side; that as the result of the fall, one of his vertebrae was frac-

tured and another one was knocked out of place, and the claimant was otherwise injured and suffered great pain.

Claimant further alleges that he was examined by the regiment's physician and sent to the hospital at Rockford, Illinois, where he remained for three or four days; that while in said hospital he was put into a plaster cast, and was compelled to remain in the hospital until about the 15th day of August, 1931, at which time he was transferred to the hospital at Fort Sheridan, Illinois, where he was compelled to remain until the 28th day of October, 1931, and up to the time of the filing of the declaration, he was compelled to remain in his home. He also contends that he was at the time of the filing of the declaration, suffering great pain and was a charge upon charity, and was then unable to work and earn a living. He claims a permanent injury and states that he feels that he will never be well again and consequently he will not be able to do any laborious labor. Claimant also alleges that he is a married man and the head of a family, consisting of his wife and two children, who at the time of the injury, were 13 and 12 years respectively.

It is also averred that the injury was caused solely because of the failure of his superior officers to see to it that the large hole was filled in, and because of the insistence of the officers of the regiment that the lumber be moved on a rainy day, which lumber was wet and slippery, which made it difficult for the claimant to sustain his position while riding on the lumber. He also charges that it was the duty of his superior officers to see that he worked under safe conditions and that the roads were in good repair and free from holes and bumps, and charges that he was in the exercise of due care and caution for his own safety.

A motion was made by the Attorney General to dismiss this case on the ground that claimant seeks to recover for injuries alleged to have been received while on duty as a member of the Illinois National Guard and the Military Code makes provision for compensation for the injuries complained of without resort to the Court of Claims, and because thereof this court has no jurisdiction of the case.

It appears from the evidence that on October 4, 1932, General C. E. Black, the Adjutant General, filed a statement to the effect that claimant was on duty at field instruction of the Illinois National Guard as a member of Company "B"

8th Infantry, from August 1 to 15, inclusive, 1931; that on August 2, he was on fatigue duty, transporting a boxing ring from the warehouse to the regimental area by means of a truck; that shortly after leaving the main road, enroute to the boxing ring, the truck struck a depression, and the claimant fell out of the truck and struck the ground. The diagnosis made at the time was "Fracture of eleventh and twelfth thoracic vertebrae"; that the injury complained of was not due to the soldier's misconduct; that after the accident occurred, he was hospitalized at St. Anthony's Hospital, in Rockford, under observation and treatment for compression fracture of eleventh and twelfth thoracic vertebrae, and was admitted to the hospital at Fort Sheridan August 15, 1931, for further treatment. During this time has was in a plaster cast that fit well and had been very well put on; that this cast had been applied at the hospital in Rockford, Illinois, on August 7th. The Adjutant General further stated that physical examination on completion of hospitalization shows a complete recovery; that the claimant walks normally; that the maximum degree of improvement from hospitalization and treatment has been reached; that the claimant is physically fit for the performance of full military duty and further hospitalization or treatment is not necessary, and that the claimant was discharged from the hospital on October 28, 1931 and ordered home; that upon the recommendation of his Company Commander, he was discharged from the service of the State of Illinois because of removal from jurisdiction, having moved to Houston, Texas. From a second letter dated May 4, 1933, he states that supplemental to his report of October 4, 1933, regarding the case of *Claude Echols* vs. *State of Illinois,* No. 1991, in the Court of Claims, the Attorney General was informed a Board was convened for the purpose of inquiring into the present physical status of the claimant. The board found the diagnosis to be '(1) Compression fracture, slight 11th—12th dorsal vertebrae— healed, without deformity. (2) Osteo-arthritis, lumbo sacro spine—which existed prior to Military service and was probably not aggravated by the injury sustained August 2, 1931. (3) Syphilis. After the word "Syphilis" there is a question mark in parenthesis. The Board recommended that (1) A history of findings and treatment of Cook County Hospital and St. Lukes Hospital, Chicago, Illinois, be obtained if pos-

sible. (2) That as far as Military service is concerned there is no further need for medical or surgical treatment. (3) That claimant is not entitled to pay under provisions of the Military and Naval Code. (4) An X-ray picture of the lower dorsal lumbar spine be taken at this time.' The following additional data was submitted: 'Claimant is 35 years old, married, two children—14-12 years old, former occupation that of truck driver. Unemployed past two years approximately. He has not worked since his discharge from hospital at Fort Sheridan, August 27, 1931. During the six months following discharge from Fort Sheridan, he received out-patient treatment at Cook County Hospital. He was then sent to the Veterans' Bureau where he was informed he was not eligible for treatment by them, and for the past two months has been receiving treatment twice weekly at St. Lukes Hospital, Chicago,—anti-luetic. It was also ascertained that claimant was under treatment in out-patient department at St. Luke's Hospital, Chicago, for syphilis. The Military Board that examined the claimant felt that the claimant had fully recovered from any injury sustained at camp, and that his present complaints were said to be numerous and indefinite but were not due to Military service, but rather to a rheumatic condition aggravated by syphilis. There was considerable doubt in the mind of the Surgeon General, after examining the X-ray pictures made at Rockford at the time of the injury, that the man ever had a compression fracture of any vertebrae, although one of the Medical officers insisted that he did, but the fact remains it could not be found by examination while the patient was at Fort Sheridan.

"Any officer or enlisted man of the National Guard or Naval Reserve who may be wounded or disabled in any way, while on duty and lawfully performing the same, so as to prevent his working at his profession, trade, or other occupation from which he gains his living, shall be entitled to be treated by an officer of the medical department detailed by the surgeon general, and draw one-half his active service pay, as specified in sections 3 and 4 of this article, for not to exceed thirty days of such disability, on the certificate of the attending medical officer, if still disabled at the end of thirty days, he shall be entitled to draw pay at the same rate for such period as a board of three medical officers, duly convened by order of the Commander-in-Chief, may determine to be right and just, but not to exceed six months, unless approved by the Court of Claims."

Section 10, Article XVI, Military Code.

"In every case where an officer or enlisted man of the National Guard or Naval Reserve shall be injured, wounded or killed while performing his

duty as an officer or enlisted man in pursuance of orders from the Commander-in-Chief, said officer or enlisted man, or his heirs or dependents, shall have a claim against the State for financial help or assistance, and the State Court of Claims shall act on and adjust the same as the merits of each case may demand. Pending action of the Court of Claims, the Commander-in-Chief is authorized to relieve emergency needs upon recommendation of a board of three officers, one of whom shall be an officer of the medical department."

Section 11, Article XVI, Military Code.

"Necessary hospital charges incurred in cases stated in sections 10 and 11, and for beds in open or general wards, shall be paid by the State on proper vouchers made out by the attending medical officer, approved by the Surgeon General."

Section 13, Article XVI, Military Code.

The Attorney General argues:

"It would seem that the only provision made by the legislature for the payment of claims for injuries occurring to enlisted men while on duty are Sections 10 and 11, Article XVI of the Military Code. Section 10 provides that for thirty days the enlisted man shall draw one-half of service pay on the certificate of the medical officer; and if still disabled at the end of thirty days he shall be entitled to draw pay at the same rate for such period as a board of three medical officers may determine to be right but not to exceed six months unless approved by the State Court of Claims.

Under that section the only claim the enlisted man would have against the State for a period of six months would be to draw one-half pay and that only in case the attending medical officers should so certify for the first thirty days and thereafter if a board of three medical officers should so determine. After six months if the medical board should still think it advisable and the Court of Claims should approve, further payments of one-half pay would be made.

Section 11, Article XVI provides that where the enlisted man shall be injured, wounded or killed while performing his duty in pursuance of orders, said enlisted man or his heirs or dependents shall have a claim against the State for financial assistance and the State Court of Claims shall act on and adjust the same as the merits of each case may demand. Pending such action the Commander-in-Chief is authorized to relieve emergency needs upon recommendation of three officers, one an officer of the medical department."

Sections 10 and 11 above referred to, are not in our judgment inconsistent under the rule of statutory construction.

We must give to each of the above sections a construction as nearly as possible as what appears to be the intent of the legislature. The working of Section 10 apparently was to apply to an enlisted man ''who may be wounded or disabled in any way while on duty.'' Section 11 applies when the enlisted man ''shall be injured, wounded or killed'' while performing his duty in pursuance of orders from the Commander-in-Chief.

If both sections should automatically become applicable to any injury arising to an enlisted man then two separate bodies might at the same time be called upon to adjust the claim for the injury. Certainly the legislature did not intend this. To give each one the proper construction, first apply Section 10 to all cases possible and where that section is broad enough to fully compensate for the injury, no resort need be made to Section 11. In case of death Section 10 could not apply and Section 11 would apply, or if the injury should be so severe that it would be impracticable to apply Section 10, then Section 11 would apply. Under Section 10 the Court of Claims would have no jurisdiction until a payment constituting a period of six months, one-half pay, had been made to the injured man and then such jurisdiction would only be in the way of an approval of the action of a medical board advising that such payment should be made for a period in excess of six months.

It is the opinion of the court that Section 10 became applicable to claimant's injury, and before claimant could invoke the jurisdiction of this court he would have to show that a medical board provided for, had determined that he was entitled to one-half pay for a period in excess of six months, and the board has decided he was not entitled to any such pay for a period of six months.

We cannot hold, as a matter of law, that it is the duty of his officers to see that he worked under safe conditions; that by the very nature of the services rendered by a soldier to a military company, whether in peacetimes or in war, that soldier is required to perform military duties whether in sham battle or not, and we cannot as a matter of law, hold, that the superior officers were required under the circumstances in this case to furnish the claimant a safe place in which to work.

No attempt is made to show either by the proof or evidence that claimant's superior officers knew, or should have known by the exercise of due care and caution, of the depression in the road complained of. Neither could we hold as a matter of law, that he could legally bind the State even if they did know of such depression.

By the very nature of things, military service is not a rocking chair employment.

It appears that all of the claimant's expenses, while at St. Anthony's hospital, Rockford, Illinois, and while in Chicago hospitals were paid. For the reason that the military board had made no finding, in favor of the claimant, we feel that we have no jurisdiction in the case, and the motion to dismiss will, therefore, be sustained.